Thrasher vs. Postel and another.

THRASHER, Respondent, vs. POSTEL and another, Appellants.

*March 24 — April 9, 1891.*

*Negligence in repairing bridge: Evidence: Instructions: New trial.*

1. In an action by a wife for personal injuries alleged to have been caused by the negligence of the defendants in not maintaining a proper railing upon a toll-bridge operated by them, where the direct evidence shows that the injury was caused by the want of such railing, and that neither the plaintiff nor her husband, who drovo the wagon in which she was riding, was guilty of any contributory negligence, a verdict in her favor ought not to be set aside as being against evidence, where the only evidence to the contrary is that her husband made some conflicting statements after the accident.

2. It is the duty of parties controlling a toll-bridge, who keep the same open for travel while making repairs, on removing the railings to erect in their place adequate and safe barriers to prevent horse and vehicles from falling over the sides of the bridge; and it is not error for the court to so charge the jury, and to refuse to charge them them that, if such parties "used such reasonable precautions as men of ordinary prudence should be required to use under such circumstances the plaintiffs cannot recover."

3. A neglect of the court to charge the jury that the defendants were not liable for an injury resulting from plaintiff's imprudence after the accident will not be considered on appeal, if not excepted to at the trial.

4. In an action by a wife for personal injuries, evidence that her attending physician advised her husband that it was not safe to move her, is not admissible for the purpose of showing that her injury was in part caused by her being moved too soon, if not shown to have been given in her presence, or communicated to her.

5. A new trial will not be granted because of newly discovered evidence of a fact which was clearly proved on the former trial.

6. Nor will a new trial be granted, after a judgment against defendants who have defended the action on their own account, in order to bring in other parties who, as they claim, are ultimately liable.

APPEAL from the Circuit Court for *Grant* County.

The case is fully stated in the opinion.

For the appellants there was a brief by *Brooks & Blan-*

Thrasher vs. Postel and another.

*chard,* and *W. E. Carter* and *A. R. Bushnell,* and oral argument by *W. E. Carter* and *A. R. Bushnell.* They took the ground that the weight of evidence was overwhelmingly against the verdict, and the proof of contributory evidence was sufficient to defeat the action. *Prideaux v. Mineral Point,* 43 Wis. 513; *Otis v. Janesville,* 47 id. 422; *Thorogood v. Bryan,* 8 C. B. 115. The court erred in its charge as to railings. *Tift v. Towns,* 53 Ga. 47; Shearm. & Redf. Negl. 251; *Frankfort Bridge Co. v. Williams,* 9 Dana, 405; *Orcutt v. Kittery Pt. Bridge Co.* 53 Me. 500; *State v. Zanesville T. Co.* 16 Ohio St. 305; *Grigsby v. Chappell,* 5 Rich. Law, 443.

For the respondent there was a brief by *Spensley & McIlhon* and *J. M. Smith,* and oral argument by *Calvert Spensley.*

TAYLOR, J.   The respondent brought this action to recover damages for personal injuries, which she claims were caused by the negligence of the appellants.   The material facts in the case are the following:

On the 12th of December, 1888, the respondent and her husband were on their way home from a visit to her mother. They were traveling with a team of two mules attached to a one-horse single-seated conveyance, with a tongue attached instead of thills.   A small boy was in the buggy with them, seated on the bottom of the buggy in front of the plaintiff.   The highway upon which they were traveling crossed the Wisconsin river at Muscoda upon a toll-bridge owned by and in the possession of the defendants. The plaintiff and her husband had crossed the bridge five days before, when going north on their visit, and had at that time paid the toll for crossing and for the return trip. The bridge was at the time undergoing repairs, or in the process of reconstruction.   Whether this fact was known by the plaintiff or her husband before they attempted to

cross the bridge on their return trip is not very clearly shown by the evidence. However that may be, the evidence is undisputed that the bridge was kept open for travel, and that tolls were taken for crossing the same when the accident happened. The testimony on the part of the plaintiff shows that just before the accident the plaintiff and her husband started to cross the bridge from the north side; they met a team crossing from the south, and stopped their mules to fix or tie a halter that had become loosened. This was on the turnpike, or, as it was called, the "dump," and near where the bridge structure commenced on the north side. The bridge is composed of trestle-work for some distance before it reaches the water. After tying the halter, the husband got into the buggy, and drove onto the bridge some 300 feet, when the mules stopped, and pricked up their ears as though frightened at something. The husband then noticed men working on the bridge, about 300 feet distant, about and upon a truss, about sixteen feet high above the floor of the bridge.

The testimony of the husband is that when the mules stopped and he saw the men working above the bridge, thinking there might be some danger, he immediately jumped from the buggy, and put up his hands to help his wife out, and immediately and before she could get up the mules began to back, and thereupon he seized them by the bits or bridles, and attempted to hold or stop them. The off mule backed with more force than the other, and cramped the buggy across the bridge, and in spite of his efforts to stop them, the hind wheels of the buggy went off the side of the bridge and dropped down, and threw the plaintiff and the boy to the frozen sand, about twelve feet below; and by the fall the plaintiff was seriously injured. When the wheels went off the bridge, the tongue broke, and the mules remained on the bridge. At the point where the buggy went off the bridge, the railing of the bridge had been re-

moved by those working on the bridge; and there was nothing to prevent the buggy from going over, except an oak post six inches square, which had been there for about twenty years as a part of the old railing of the bridge.

This version of the accident was disputed by the appellants, and their claim is that the off mule was a vicious animal, and the husband knew the fact, and that, when the mules stopped on the bridge, the husband, fearing that he would have difficulty in passing over because of the men working thereon, and because of the elevated trusses or iron-work, got out of the buggy while the mules were standing still, and took them by the bridles, and undertook to turn the buggy around on the bridge for the purpose of returning to the north side; and that in his effort to turn the buggy, on account of the narrowness of the bridge, the buggy was backed off the bridge.

After the accident the plaintiff and her husband remained at the house of McVeagh until the 17th. While there she was attended by a physician, Dr. Jameson. The doctor testified that he made a thorough examination, and in his opinion there were no internal injuries, and no bones broken, and that she suffered from a nervous shock. On Friday he thought her doing well, and told her and her husband that he thought she would not need further medical attendance. Dr. Jameson says that the husband then spoke of going home, and he advised him not to go; that she had better remain a few days longer, till she got better able to travel; that he did not think she was strong enough to take the trip. He said, "No;" he intended to go home, and his wife wanted to go, and he was going. He says he then told the husband that if he did he did it at his own risk; that he would not be responsible for the result. This conversation with the husband was not in the presence or hearing of the plaintiff. The doctor also testified that on Sunday before she left for home he said to the plaintiff

that it would not be safe for her to take the journey home; that, although she did not need his services further, still he advised her strongly not to take the trip.

The plaintiff denies that the doctor gave advice to her as above stated, and, on the contrary, she testified "that on Sunday night Dr. Jameson told her that her husband could take her home at any time, and gave me orders when I went home to take fresh cream, and make salve, and rub myself; and he said, ' You can go home at any time.' "

The evidence as to the cause of the injury is not disputed. The fall from the bridge caused the first injury, and on the whole evidence there can be but little doubt that the injury was of a much more serious character than was supposed by Dr. Jameson. Upon the question as to how the buggy came to go off the bridge the facts are disputed, and it is contended by the learned counsel for the appellants that there is such a great preponderance of the evidence supporting the contention of the appellants that the plaintiff's husband, without any necessity therefor, undertook to turn upon the bridge, and in so doing backed the buggy off the bridge, that it became the duty of the court to have directed a verdict for the appellants. It is unnecessary to give any further statement of the evidence, except to say that there is very little evidence tending to show that the mules, or either of them, were vicious, and considerable evidence tending to show that they were quiet and easily handled.

The jury found a verdict in favor of the plaintiff for $3,000. Afterwards, upon a motion to set aside the verdict on the ground, among other things, that the verdict was excessive, the court ordered that the same should be set aside, and a new trial granted, unless the plaintiff remitted $1,000, and thereupon the plaintiff remitted $1,000, and took judgment for $2,000, and from this judgment the defendants appealed, and assign the following errors for

Thrasher vs. Postel and another.

reversal of the judgment: "*First*, the verdict is not supported by the evidence; *second*, the court erred in not charging the jury as to defendants' non-liability for any injury resulting to the plaintiff from the exposure of the ride from Muscoda to Mineral Point; *third*, the court erred in refusing to give the instruction asked by the defendants; *fourth*, the court erred in striking out the conversation of Dr. Jameson and Mr. Thrasher, relative to taking the ride home; *fifth*, the court erred in not granting a new trial upon the newly-discovered evidence, and because of the surprise, mistake, inadvertence, and excusable neglect of defendants."

This court, it seems to us, would not be justified in setting aside the verdict in this case as not sustained by the evidence. The evidence of the plaintiff and her husband upon the question as to how the buggy came to be thrown off the bridge is plain and clear, and not at all inconsistent with any well-established fact in the case. He testifies that the mules stopped and seemed frightened at the men and objects before them; that he immediately jumped from the buggy, with the intent to, and offered to, assist his wife in getting out of the buggy. She states the same thing, and he says that he did not carry out his intent because the mules commenced backing. This fact would account for his omitting to assist plaintiff out of the buggy, and attempting to arrest the backing mules; and all there is against this is the testimony of witnesses as to what the husband afterwards said about the occurrence. The testimony of witnesses as to statements made out of court by a witness in the case are at best not the most satisfactory kind of evidence, and when proved do not establish the truth of the statement said to have been made by the witness; and, so far as the party to the action is concerned, they are only admissible as impeaching the credit of the witness giving evidence on her behalf on the trial. It is always a question for the jury to

say what credit shall be given to the testimony of a witness, and the fact that he has made statements out of court inconsistent with his statements in court only go to his credibility, and of themselves prove no fact on the case. But the learned judge who tried this case, who heard all the evidence, and saw all the witnesses, was satisfied that the verdict was supported by the evidence, and he states on the motion for a new trial that he had no doubt but that, upon the evidence, the jury would find for the plaintiff, but that he did not suppose they would find for so large an amount of damages. Under these circumstances, we cannot say the verdict is wholly unsupported by the evidence.

The second error assigned does not appear in the record. This court has decided that, in order to assign error for not charging the jury upon a special point, or for refusing to give an instruction asked and refused, an exception must be taken at the trial, and not afterwards. See *Jenks v. State*, 17 Wis. 665; *Nicks v. Marshall*, 24 Wis. 139; *Firmeis v. State*, 61 Wis. 140; *Stadler v. Grieben*, 61 Wis. 505. The learned circuit judge states in the bill of exceptions what took place on the trial in regard to the matter as follows, after the court had instructed the jury upon the subject of damages: "Mr. Carter, counsel for the defendants, arose, and orally asked the court to instruct the jury that the defendants would not be liable for pain, suffering, or impairment of health resulting from the drive from Muscoda to Mineral Point. The court, in reply, in the hearing of the jury, said that that was the substance of the instructions of the court to the jury; that it must be understood by the jury that the defendants were liable only for the direct result and consequence of the fall, and not from any aggravation of the injuries caused by the default or negligence of the plaintiff herself." This was said immediately before the jury retired to consider upon their verdict. It seems

to us there can be no ground for error that the jury were not properly instructed as to damages, and for what injuries damages should be assessed.

The defendants requested the court to give the following instruction to the jury, viz.: " The defendants were required to have strong railings at the sides of the bridge, but they undoubtedly had the right to take them down for the purpose of making necessary repairs of the bridge, and if, while such repairs were being made, such reasonable precautions were used against accident to passengers over the bridge as men of ordinary prudence should be required to use under such circumstances, the plaintiff cannot recover because of the lack of absolute and complete protection in the place of such railings." The court declined to give the instruction, and in its stead gave the following instruction, viz.: " It was the duty of the defendants to erect and maintain 'strong railings' at the sides of the bridge. They had a right to repair the bridge, and for that purpose might remove portions of the permanent railings at the sides; but when they did remove a part of the side railings it was their duty, when they nevertheless held the bridge open for travel, to erect at the place where the railings had been removed adequate and safe barriers to prevent horses and vehicles from falling over the sides of the bridge."

This instruction submitted the question of the defendants' duty to keep up a protection at the sides of the bridge while keeping the same open for travel; although engaged in repairing the bridge, and was sufficiently favorable to the defendants. It is not fairly subject to the criticism made by the learned counsel for the appellants that it was an instruction that the defendants must keep up such barriers as would under all circumstances prevent horses and vehicles from falling over the sides. I suppose the object of a railing to the bridge was to prevent carriages and horses, under ordinary circumstances, from falling off the

bridge; and it seems to us quite probable that, if there had been a reasonably strong railing or barrier at the place where the buggy went off the bridge, it would have prevented the accident. At all events it was a question for the jury to say whether the accident would have happened even if a suitable barrier had been on the side of the bridge at the place of the accident, and by their answer to the eleventh question in the special verdict the jury found that "if there had been a strong and proper railing suitable for a side-guard upon a bridge like the bridge in question where the open space was, over which the buggy went, the plaintiff would not have been thrown over the bridge on the sand-bar." We think the jury were in no way misdirected or misled by the instructions given by the learned judge, and that there was therefore no error in refusing the instruction asked. The duty of the owners of the bridge, if they kept it open for travel while making repairs on it or renewing it, is well stated in *Orcutt v. Kittery Point Bridge Co.* 53 Me. 500–502; *Grigsby v. Chappell,* 5 Rich. (S. C.) Law, 443. It is evident that it was the duty of the defendants, while keeping their bridge open for public use, even though in the act of repairing the same, to keep it in such condition as to be reasonably safe for such use; and under the evidence in the case at bar, whether it was in a reasonably safe condition for public travel was clearly a question for the jury, and not of law for the court.

It is claimed that the court erred in striking out the testimony of Dr. Jameson as to his conversation with the plaintiff's husband upon the subject of taking her home at the time he did, and of his advising him not to do so. This conversation was not in the presence or hearing of the plaintiff, and there is no testimony tending to show that such advice, if it was given to the husband, was ever communicated by him or any one else to her before she left for home. We know of no principle of law which makes such

conversation with the husband competent evidence against the wife, who is plaintiff in the action, and under our laws entitled to the sole benefit of the damages recovered from the defendants.

The question of granting a new trial for newly discovered evidence was, we think, properly overruled in this case. The additional evidence, which it was claimed could be produced, would at best have only slight influence in producing a different verdict. Under the evidence, as it appears in the record, it must be quite evident that her ride home was, under the circumstances, an imprudent thing, judging from what followed; and that fact was clearly before the jury on the trial, and it would be made no clearer by the testimony which it is proposed to add to the case.

The contention that a new trial should be granted so as to permit the defendants to call on the bridge company to defend the action, so that such company would be concluded by the judgment in this case, is destitute of all merit. It would hardly be just to compel the plaintiff to be at the trouble and expense of another trial of this case, in order to relieve the defendants from the expense of a trial of an action against the bridge company. If the defendants, by their carelessness or confidence, have failed to fix the liability of the bridge company to them for the damages incurred by the plaintiff in this action, they ought not to ask to be relieved at the cost and expense of the plaintiff, who is in no way responsible for their over-confidence, or for their carelessness and negligence as to their own interests.

*By the Court.*— The judgment of the circuit court is affirmed.