GEHL and another, Respondents, vs. MILWAUKEE PRODUCE COMPANY, Appellant.

*December 17, 1902—January 13, 1903.*

*Sales of chattels: Contracts: Breach by vendee: Evidence: Special verdict: Instructions to jury: Time to take exceptions: Due diligence: Trade custom: Measure of damages.*

1. In an action for damages, based on a refusal to accept goods sold under a contract for delivery at any time before a certain date at buyer's option, there was conflict as to an alleged consent to postponing the time of delivery, and as to a tender of delivery on the original and postponed date. *Held,* that submitting to the jury a question whether the defendant refused to accept the goods upon an offer to deliver the same in accordance with the contract, and at a time when, by virtue of the postponements agreed upon, they still had a right to deliver, was error. Such question involves several issues, and an affirmative answer to the question does not indicate that the jury were all agreed upon the same facts.

2. In such case, an instruction, in effect, that it was incumbent on the plaintiff to deliver the goods in accordance with the contract at defendant's place of business, and at a time when, by virtue of the postponements agreed to, plaintiff still had a right to deliver, and that "it was immaterial when such offer to deliver was made, provided you find it was a time when, by reason of the postponements, the plaintiff had a right to deliver, and made the offer to deliver in accordance with the terms of the contract," is *held* to be misleading and confusing, if not positively erroneous; it leaves the jury to infer that delivery might be tendered at any date before the time expired.

3. In such case, that part of the instruction that there must be an offer to deliver "in accordance with the contract" at defendant's place of business, is too indefinite, where it appeared that the contract required manual delivery, and there was still in the case, and before the jury, evidence of offers of delivery of warehouse receipts, the jury being given no express or implied instruction that such offers of warehouse receipts were ineffective.

4. Exceptions to refusal to instruct the jury subserve their purpose, and are taken in due time, if taken after the retirement of the jury and before verdict.

5. In an action for damages, based on a refusal to accept goods under a contract of sale, it was conceded that the proper method of delivery was tendering actual delivery of the property. *Held*, that it was error to refuse to instruct the jury that a tender of warehouse receipts covering such goods was not sufficient.

6. Under a contract of sale of goods, delivery to be at buyer's option on or before a certain date, the time of delivery was extended after an offer to deliver. *Held*, that the buyer was not in default unless there was a new offer of delivery at the close of the extended period.

7. Under such contract a delay of ten days after the date of tender of delivery, on a falling market, and until the season for the particular goods was nearly over, before attempting to make a resale, is not due diligence.

8. Where, after the buyer of goods has refused to accept them, the seller afterwards received and refused a *bona fide* and responsible offer for the goods at a higher figure than that finally obtained, the resale cannot be said to have been made with due diligence.

9. Where the contract for the sale of seeds was silent as to where the seeds were to be weighed, it was competent to show a uniform trade custom not to accept the weight on certain scales.

10. If competent evidence is admitted on the question of such a trade custom, instructions to the jury as to its effect should be given.

11. An instruction that, if the jury find any witness has sworn falsely as to any material fact, the jury is at liberty to reject his entire testimony, unless corroborated, is erroneous in omitting the element of wilful false swearing.

12. It is inaccurate to instruct the jury that the necessary damages, for refusing to accept goods under a contract of sale, are the difference between the contract price and the sum the plaintiff could have obtained by due diligence after defendant's refusal to accept.

13. In case of the breach by the vendee of an executory contract for the sale of goods in refusing to accept the same, the measure of the vendor's damages is the difference between the market value of the property at the time of the breach and the contract price.

14. In such case the market value is the amount realized by a resale, if the vendor exercises all reasonable diligence in the resale to secure the best price obtainable.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This is an action to recover damages on account of the defendant's refusal to accept and pay for 160 bags of white ·clover seed in alleged breach of a contract made between the parties orally February 1, 1897, and confirmed by the following written memorandum on the following day:

"Milwaukee, Feb. 2, 1897.

"M. & N. Gehl—*Dear Sirs:* Confirm purchase about 160 'bgs. white clover 8¾; 9 bgs. 6c; 9 bgs. 5c; 25 bgs. red 7¼; screen 2c; buyer's option March 1.

"Truly yours,
"MILWAUKEE PRODUCE Co."

This was a contract requiring the plaintiffs to deliver and the defendant to accept the seed upon defendant's request at any time prior to March 1st, and in no event later than that ·date. The answer was, in effect, a general denial; but on the ·trial the making of the contract was admitted, and the defense

relied on was that the plaintiffs had breached the contract by
not delivering or offering to deliver the seed according to the
contract. The case was here upon defendant's appeal from a
former judgment in plaintiff's favor, and will be found re-
ported in 105 Wis. 573, 81 N. W. 666, where a full state-
ment of facts will be found. Another trial of the action has
been had, and much of the evidence given on the former trial
has been substantially repeated on the present trial, with some
important differences, which will be found stated in the
present opinion. The following special verdict was rendered
by the jury:

"(1) Did the defendant refuse to accept the clover seed in
question upon an offer by plaintiffs to deliver the same in ac-
cordance with the contract, and at a time when, by virtue of
the postponements agreed upon, they still had a right to de-
liver it?" Answered by the jury, "Yes." "(2) If the court
shall be of the opinion that the plaintiffs are entitled to judg-
ment, in what sum do you assess their damages?" Answered
by the jury, "$779.07."

The defendant then filed the following exception:

"The defendant excepts to the first question of the special
verdict, and to the submission thereof by the court to the jury,
for the reasons that said question assumes matters of fact not
admitted, involves two issues, does not submit any material
issue to be determined by the jury, and the submission of said
question is contrary to law."

Upon this verdict judgment was rendered for the plaintiffs
for the damages found by the jury, with costs, and the de-
fendant appeals.

For the appellant there was a brief by *Roemer & Aarons,*
and oral argument by *C. L. Aarons.*

For the respondents there was a brief by *Miller, Noyes &
Miller,* and oral argument by *A. W. Fairchild.*

Winslow, J. As indicated in the foregoing statement of
facts, there were several important differences in the evi-

dence upon the second trial from that which had been given
on the first trial. Upon both trials it was admitted that there
was no attempt to deliver the seed on March 1st, and that the
time for delivery was, by general consent, extended to the 14th
or 15th of March, but here the difference begins. Upon the
former trial the plaintiffs simply claimed to have made a
valid offer of delivery of the seed on March 15th by present-
ing to defendant a warehouse receipt for the seed, with unpaid
storage charges thereon from December 18, 1896, accom-
panied by a draft calling for payment of the contract price
thereof, with interest from March 1st; and they practically
rested their case upon the claim that this constituted a valid
delivery under the contract. The defendant, however, con-
tended that delivery must be made at its store, and offered
evidence tending to prove that such was the uniform trade
custom in Milwaukee. In this state of the evidence the court
refused to submit the question of the existence of the alleged
custom to the jury, and only submitted two questions of fact
on this branch of the case, namely: (1) Whether the plaint-
iffs, on March 1st, notified the defendant of their willingness
to perform; and (2) were the postponements thereafter had at
the instance of the defendant or of the plaintiffs? It was held
that the question as to the existence of the alleged custom
should have been submitted, and, further, that the two ques-
tions above recited were inconclusive, however they were
answered, and that the true issue was "whether the defendant
refused to accept the merchandise upon an offer by the plaint-
iffs to deliver in accordance with the contract, and at a time
when, by virtue of the admitted postponements, they still had
a right to deliver." As there was but one offer to deliver re-
lied on by the plaintiffs upon that trial, namely, the alleged
offer of March 15th, and as there was no dispute concerning
the postponements, the issue so suggested was a single issue,
involving simply the consideration of the question whether
the offer of the warehouse receipt and the accompanying

draft on March 15th constituted a valid offer of delivery of the seed pursuant to the contract. The plaintiffs' alleged notification of willingness to deliver on March 1st cut no figure, because postponements were agreed upon, and the contract was to deliver at the *buyer's option;* hence, when plaintiffs had agreed to an extension of the time beyond March 1st, within which the buyer could exercise his option, they could not put the defendant in default by an offer to deliver on that date. They must then deliver or offer to deliver at any time within the postponement when defendant exercised its option, or, if not exercised at all, then at the end of the postponed period.

Upon the present trial, however, there was a material change in the situation as presented by the evidence on the part of the plaintiffs. The testimony of a teamster was introduced to the effect that he took a wagon load of the seed, on the 15th of March, to the defendant's store, and made an offer to make manual delivery at the store, and that the defendant's officers refused to receive it. There was also further evidence on the part of the plaintiffs that the defendant requested and the plaintiffs consented to further postponements of the time of delivery after March 15th until the 26th day of March, when one of the plaintiffs, accompanied by Mr. Mc-Cabe, their attorney, made a new offer to deliver by presentation of a new warehouse receipt with all storage charges paid, accompanied with a bill and draft from which the item of interest had been omitted, and also offered at the same time to make actual delivery of the seed, both of which offers were refused. Both of these offers of actual delivery were denied by the defendant's managing officer, Mr. Reel, who also denied that any extension after the 15th of March was asked or agreed on. Furthermore, it was, in substance, admitted by plaintiffs on the trial that the contract called for actual delivery at the defendant's store, and plaintiffs' counsel state in their brief upon this appeal that they do not contend that the

offers to deliver warehouse receipts were offers in accordance
with the terms of the contract. It is very evident that these
changes in the evidence as to offers of actual delivery at the
store, together with the admission that such delivery was the
delivery required by the contract, make a radical change in
the issues upon which the case depends. No longer does the
evidence present the single question whether there was a valid
offer to make delivery and a refusal to receive on the 15th
of March, but several questions are presented, namely:
(1) Whether the time of delivery was, by consent, postponed
to March 26th; and, if so (2) whether there was an offer to
make actual delivery and a refusal to accept on March 26th;
and, if there was no postponement after March 15th, (3) was
there an offer to make actual delivery and refusal to accept on
March 15th? Notwithstanding this change of issues, the trial
court put to the jury the question stated by this court upon
the former appeal as the issue in the case. It is plain that
upon this trial that question was not the proper question, be-
cause, as applied to the evidence now before us, it involves
three separate questions. The questions in a special verdict
should present single issues of fact which are capable of cer-
tain answers. *Carroll v. Bohan,* 43 Wis. 218. In the instant
case we cannot tell what facts the jury found when they
answered "Yes," to the first question submitted to them, nor
can we tell whether they agreed upon the same facts. Some
may have concluded that there was no postponement agreed
upon after March 15th, and that the alleged offer of delivery
at the store was made on that day, while some may have
thought that there was a postponement, and that the alleged
offer of delivery was validly made on March 26th; and so the
jury may have all agreed that the question should be an-
swered in the affirmative, though disagreeing on the vital
facts at issue. So the answer becomes uncertain, and we do
not know from it what facts the jury found, or whether they
agreed on any facts. It follows, necessarily, that there must

be a new trial of the action, because the verdict does not determine the material facts in the case.

There are, however, a number of alleged errors in detail which are fairly presented, and which should be passed upon, especially in view of the fact that there must be a new trial. The trial court, in charging the jury upon the first question of the verdict, gave the following instructions, which were duly excepted to:

"It is incumbent upon the plaintiffs to establish by a preponderance of the evidence that the plaintiffs offered to deliver the clover seed in question, in accordance with the contract, at the defendant's place of business, and at a time when, by virtue of the postponements agreed upon between the parties, they still had a right to deliver it; and to further establish that the defendant refused to accept the same. It is immaterial, in the consideration of this question, when such offer to deliver was made, provided you find upon the evidence it was a time when, by reason of the postponement agreed upon between the parties, the plaintiffs had a right to deliver, and made the offer to deliver in accordance with the terms of the contract, and the defendant thereupon refused to take the seed so offered."

These instructions were certainly misleading and confusing by reason of their very general and indefinite character, if not positively erroneous. As before indicated, an offer to deliver at any time prior to the expiration of the defendant's optional period would not suffice to put the defendant in default. The goods were to be delivered at defendant's option, and the offer must have been made either at some time when the defendant requested delivery, or at the expiration of the period if no request was made. The instructions are not clear upon this point, but might easily be misunderstood. Again, the instructions say that there must be an offer to deliver, "in accordance with the contract," at the defendant's place of business. This is certainly very indefinite. The plaintiffs had substantially admitted that there must be an offer of manual

delivery of the goods, but the evidence of the offers to deliver warehouse receipts was still in the case and before the jury, and they were not told, either expressly or impliedly, that such offers were ineffective, but were left apparently to draw their own conclusions as to whether such offers constituted offers to deliver in accordance with the contract or not. These points were fully and quite fairly covered by the first, second, and third instructions requested by the defendant and refused by the court. Here, however, arises a question as to whether any proper exceptions have been preserved to the refusal of the court to give the instructions asked for by the defendant. It appears by the bill of exceptions that the defendant submitted in due time twenty-one written instructions, all of which were refused. The bill of exceptions recites, immediately after the judge's charge, the following: "The jury having gone out, the defendant's counsel in open court made the following exceptions, which were noted down by the reporter as follows, which exceptions the defendant's counsel had asked leave to file before the jury retired: . . . The defendant now excepts to the refusal of the court to give the first instruction proposed by the defendant; the same of the second, third," etc. (naming all of the requested instructions by number). "The jury, after deliberation, returned into court with their verdict, which is of record, wherein," etc. The respondents' claim is that these exceptions to the court's refusal to instruct were not taken before the jury retired, and hence are not available upon appeal. We can hardly approve of this method of throwing upon this court the duty of determining whether exceptions were properly taken or not. It is the function of the bill of exceptions to state what exceptions were properly reserved upon the trial, and it is the duty of the trial judge to settle the bill. However, as the question is fairly presented for decision, and is one of considerable importance, we have concluded to determine it.

The common-law rule, as generally stated, was that exceptions to instructions or refusal to instruct must be taken at the trial in order to be available. Our statute (sec. 2869, R. S. 1878), however, changed this rule as to exceptions to instructions actually given by the court so that they could be taken at any time during the term, but left exceptions to refusals to charge to be governed by the old rule. *Firmeis v. State,* 61 Wis. 140, 20 N. W. 663. The question is whether this common-law rule means that the exception must be taken before the jury retires, or will it be sufficient if taken at any time before the trial is closed by the rendition of the verdict. The language most frequently used in stating the rule is that the exception must be taken at the time or at the trial. Such is the expression used in the following cases in this court: *Jenks v. State,* 17 Wis. 665; *Firmeis v. State, supra;* *Thrasher v. Postel,* 79 Wis. 503, 48 N. W. 600; *Adams v. McKay,* 63 Wis. 404, 23 N. W. 575; *Stuckey v. Fritsche,* 77 Wis. 329, 46 N. W. 59. In *Kerslake v. McInnis,* 113 Wis. 659, 89 N. W. 895, is was said that the exceptions were too late, because not taken until after the verdict. There are two cases, however, which use different language, and which seem to afford some foundation for the respondents' contention. In *Nicks v. Town of Marshall,* 24 Wis. 139, the exceptions were taken after the verdict was rendered, and hence were too late under any construction of the rule; but in discussing the question it was said that justice would be best subserved by requiring exceptions to be taken when the charge is given, while there is still an opportunity to correct them, "than by deferring the exceptions *until the cause has been submitted to the jury.*" And in *Little v. Town of Iron River,* 102 Wis. 250, 78 N. W. 416, it was said that exceptions to refusals to charge must be taken *"on the trial, usually before the jury retires."* The authorities cited in support of this latter statement are the cases of *Firmeis v. State, Adams v. McKay, Stuckey v. Fritsche,* and *Thrasher v. Postel, supra,* none of

which go any further than to state that the exceptions must be taken at the trial. Looking outside of our own state, we find that the expression most frequently used in other courts is that exceptions must be taken "at the time," or "immediately," or "at the trial." Such is the case in *Rawlins v. Tucker*, 3 Iowa 213; *Moore v. Ross*, 11 N. H. 547; *Tagg v. Miller*, 10 Neb. 442, 6 N. W. 764; *Dozier v. Jerman*, 30 Mo. 216. It is true that in *Life & Fire Ins. Co. v. Mechanics' Fire Ins. Co.* 7 Wend. 31, it was said that an exception to the charge after the jury had withdrawn came too late, but no authority is there cited to the proposition. We also find it stated in 8 Ency. Pl. & Pr. 271, that "exceptions must be taken at the time of the refusal, and before the jury retires." In support of this proposition are cited *Dozier v. Jerman, supra; Tagg v. Miller, supra; Shepherd v. State*, 36 Fla. 374, 18 South. 773; *Reed v. Call*, 5 Cush. (Mass.) 14; and *Branton v. O'Briant*, 93 N. C. 99,—none of which cases say anything about the exception being taken before the jury retires, except the last one named, which simply holds that, where instructions were desired, they "should be asked before the rendition of the verdict, and, in strictness, before the retirement of the jury." From the investigation which we have been able to give the question, we do not find that there was at common law any strict unyielding rule requiring such exceptions to be taken before the jury retires, nor do we perceive that any such technical rule is necessary in the administration of justice. The reason of the rule requiring exceptions to be taken at the trial and before verdict is simply that the mind of the court should be called to the alleged error while there is still opportunity to correct it. This reason is fully subserved by the requirement that the exceptions be taken at any time before verdict, because the judge has power at any such time to call the jury before him, and correct the charge, if he be convinced of error. In cases where many instructions have

Gehl v. Milwaukee Produce Co. 116 Wis. 263.

been asked and refused, it would often be practically impossible for counsel to take his exceptions before the retirement of the jury, unless the court should retain the jury in their seats for the purpose; thus greatly delaying the transaction of the business of the court, not only in that case, but in others to follow. We conclude, therefore, that exceptions to refusals to charge fully subserve their purpose, and are in due time, if taken after the retirement of the jury and before verdict, and hence that the exceptions in the present case are effective.

This conclusion renders necessary some consideration of the instructions asked by the defendant, which the court declined to give, and did not incorporate in his charge as given. These instructions were all directed to the first question of the verdict, and were twenty-one in number. It is not deemed necessary to recite at length all of these instructions, especially in view of the fact that we have held that the question to which they were directed was an improper question, and hence the issues will be presented in a different manner upon a new trial. Generally, we may say that the following ideas, expressed in these instructions, should have been in some form given to the jury: (1) That the proper method of delivery under the contract was by tendering actual delivery of the property at the defendant's place of business, this having been practically conceded by the plaintiffs upon the trial, and hence that an offer to deliver warehouse receipts was not a compliance with the contract; (2) that, if the time of delivery was extended by agreement of the parties, there must be a new offer of delivery at the close of such extended time in order to put the defendant in default; (3) that, if there was no extension of the period of delivery after March 15th or 16th, then it was not due diligence to wait until March 26th before attempting to make a resale, it appearing that the market was a falling one, and the season nearly over; (4) that, if a *bona fide* responsible offer for the seed was made to the plaintiffs, and

refused at a higher price than that finally obtained, then the resale was not made with due diligence. All of these propositions were contained in the refused instructions, and all of them seem to have been correct principles applicable to the case.

In addition to these instructions, there was one requested to the effect that, if there was a general custom among seed dealers in Milwaukee not to accept chamber of commerce weights, then an offer to deliver seed at defendant's store according to weights derived from the chamber of commerce scales is not a valid offer of delivery. The consideration of this instruction involves also the consideration of a ruling upon evidence. It appears that the seed was weighed by the plaintiffs upon the chamber of commerce scales, and that the bill was made out and payment requested by plaintiffs according to such weights. It also appears by defendant's testimony that Mr. Reel objected to accepting such weights, and demanded that the seed be weighed at the defendant's store, and in connection with this testimony the defendant offered evidence tending to show that there was a general trade custom among seed dealers in Milwaukee not to accept chamber of commerce weights on sales of such seed, because they were inaccurate, as they did not weigh to the pound. This evidence was objected to, and excluded. We think the ruling was erroneous. The contract is silent as to where the seed should be weighed, and the contract should be construed according to the uniform trade custom in this regard, if one could be shown. What is said in the former opinion upon the general question of the evidence of trade customs where a contract is ambiguous or indeterminate is sufficient on this point. It follows, of course, that, if the evidence should have been admitted, an instruction upon its effect should also be given if the question arises again.

In charging the jury on the subject of the credibility of witnesses the court gave the following instruction:

"If you find any witness in this case has sworn falsely as to any material point in the case, you are at liberty to reject the entire testimony of that witness, except as it may be corroborated by other credible witnesses, or by facts and circumstances."

This was erroneous, because it omitted the element of wilful false swearing. This subject has been so recently discussed in this court that no further comment is necessary here. *Lanphere v. State,* 114 Wis. 193, 89 N. W. 128.

Another inaccuracy in the charge, though not excepted to, may properly be noticed. In charging upon the subject of damages the court said that the proper rule is the difference between the contract price and the sum which the plaintiffs could have obtained by due diligence after defendant's refusal. The true rule is that in case of the breach by the vendee of an executory contract of sale of goods by refusing to accept the same the measure of the vendor's damages is the difference between the market value of the property at the time of the breach and the contract price, and that the market value is fixed by a resale if the vendor exercises all reasonable diligence in the resale to secure the best price obtainable. *Pratt v. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368.

While other questions are discussed in the briefs, it is believed that what has been said in this opinion will furnish a sufficient guide in the retrial of a case which, in its essence, is very simple.

*By the Court.*—Judgment reversed, and action remanded for a new trial.