SECOR, Plaintiff in error, vs. THE STATE, Defendant in error.

*June 5—July 3, 1903.*

*Criminal law and practice: Embezzlement: Pleading: Information: Amendment: Waiver:* Corpus delicti: *Evidence: Right to bill of particulars: Admissibility of books of account kept by subordinates of accused: Nature of property embezzled: "Money": Instructions to jury: Preliminary remarks: Reasonable doubt: Prejudicial error: Court and jury: Coercion of jury: Amendment of verdict: Time for taking exceptions to requested instructions: Statutes.*

1. Timely exceptions must be taken to the rulings of the court in criminal as well as civil cases, or the objection will be deemed waived.

2. An information filed in a criminal prosecution was amendable at common law, and the mere fact that its use has been extended, so as to include felonies, does not take away the power of the court to allow an amendment in any criminal prosecution, since the rules applicable to indictments are not enforced against amendments to informations.

3. Sec. 4703, Stats. 1898, allows amendments in criminal prosecutions in case of variance between the statement in the indictment or information and the proof "in the name or description of any person, place, or premises, or of any thing, writing or record, or of the ownership of any property described" therein. *Held,* that it was not error to permit an information for embezzlement to be amended, after the defense has entered upon its case, by striking therefrom the allegation that the money embezzled was "good and lawful money of the United States," where there was no exact proof of the character of the money alleged to have been embezzled.

4. In a prosecution for embezzlement, the evidence, stated in the opinion, examined, and *held* sufficient to establish the *corpus delicti.*

5. Under sec. 4667, Stats. 1898 (providing that, in any prosecution for embezzlement, it shall be sufficient to allege generally in the indictment or information "an embezzlement of money to a certain amount or of property to a certain value, without specifying any particulars of any such embezzlement, and on the trial evidence may be given of any such embezzlement within six months after the time stated in the indictment or information; and it shall be sufficient to maintain the charge . . . and shall not be deemed a variance if it shall be proved that any money or property of whatever amount, was fraudulently embezzled by the defendant within the said period of six months"), the *corpus delicti* is sufficiently proved by evidence of a general shortage in the accused's accounts, without proving the conversion of a specific item.

6. In a prosecution for embezzlement, the refusal to grant the accused's request for a bill of particulars is not error, when he has been advised by the state's evidence at the preliminary examination of the exact items of the charge against him.

7. In a prosecution for embezzlement it appeared that the accused was the bookkeeper of the complaining corporation, and was charged with the general supervision of all the books kept in the business of its office, and that part of the books offered in evidence, for the keeping of which the accused was responsible, contained entries, not made by him, but by subordinate employees. *Held*, that it being the accused's duty to see that such books were properly kept, they were admissible in evidence; not as conclusive evidence, but as books kept under accused's supervision and general control, of whose correctness he should, in the performance of his duty, have knowledge.

8. In a prosecution for embezzlement, the evidence showed that checks, drafts, and express orders had been received by accused as well as money; that all the receipts were entered on the books, either by the accused or his subordinates, as money, and that in a number of confessions made by the accused he spoke of his embezzlement as an embezzlement of money. *Held*, that the proof was ample to show that the amount taken was money.

9. In a prosecution for embezzlement from a corporation, remarks were made by the court, introductory to the instructions to the jury, in substance, that the offense charged was a grave one, involving the betrayal and breach of trust reposed in a trusted employee; that the entire property of corporations

must of necessity be intrusted to, and its business carried on by, its employees; that it is a matter of great importance that all employees who are intrusted with their employer's money or property, should faithfully care for and honestly account for whatever is committed to their care, custody, or possession, and that persons can protect their property from strangers, but not from trusted employees; that the case was important to defendant because it involved his personal liberty and reputation and character; that it was important to the state because it is charged with the grave duty of apprehending and punishing criminal offenses; that therefore the court asked the jury's careful and close attention to the instructions it should give, by which they were to be guided in considering the evidence and arriving at their verdict. *Held*, that such remarks were not erroneous as amounting to an argument in favor of the state, but were entirely proper for the purpose of impressing on the jury the gravity of the crime and the importance both to the state and the defendant of a careful consideration of the evidence and the instructions.

10. In a prosecution for embezzlement the court gave, in substance, the following instruction on the subject of reasonable doubt: By reasonable doubt is meant a doubt of guilt for which a reason can be given, arising out of the evidence; that the jury must bear in mind the presumption of innocence which must prevail unless the jury are satisfied from the evidence, under the court's instructions, that the defendant is guilty, beyond a reasonable doubt; that they were not to go outside the evidence to hunt up doubts, nor should they entertain a doubt that is merely fanciful, speculative, or chimerical, or which is based only on unreasonable or groundless conjecture; that a doubt which ignores a reasonable construction of the whole evidence is not a reasonable doubt, and that guilt is proven beyond a reasonable doubt when all the evidence in the case, clearly, impartially and rationally considered, is sufficient to impress the judgment of ordinarily reasonable and prudent men with a conviction on which they would act in their own gravest and most important affairs of life. *Held*, that such instruction is not subject to the criticism that it assumes that the jury were to start with the assumption that conviction should result, unless a reasonable doubt was proved, and could not reasonably be so understood by them.

11. In a criminal prosecution the jury having returned a second time for further instructions, the court charged them generally as to their duties in the matter of agreement, in substance, that the case had taken considerable time, had cost

considerable·money, and that it was important and desirable that they should come to an agreement; that he would read them what the supreme court had said, to the end that it might guide them in their further consideration of the case; that in a case tried before Judge B., then on the supreme bench, the jury, after failing to agree, were brought into court and informed that they ought not to stand out in an unruly and obstinate way, but should reason together and talk over the existing differences, if any, and harmonize the same if possible; that Justice C. approved the instruction; that in another case the instruction was given and approved by the court; that it was the duty of each juryman to give careful consideration to the views of others, not to shut his ears, and stubbornly stand upon the position he first took, regardless of what may be said by other jurymen; that it was the object of all to arrive at a common conclusion, and to that end, they should deliberate together with calmness.    The court then added that each juror should be convinced beyond a reasonable doubt, as already instructed, and directed the jury to retire and see if they could not agree upon a verdict.    *Held*, that while it would have been better had reference to expense and the justices of the supreme court been omitted, it did not constitute prejudicial error, and in other respects the instruction was unexceptionable.

12. In a prosecution for embezzlement, when the verdict was returned into court, the presiding judge stated it could not be received because not in proper form; that there were two counts, and the jury were to find on each by itself, and that he would send them back to correct the verdict in that particular.    The district attorney then called the court's attention to its instruction that the jury could set down the amount, if they did not find the amount charged in the information.    The court thereupon repeated the form of a verdict, closing with the words, "and that the value of the money embezzled exceeds a certain amount," which the jury were instructed to insert; that the court would fix the verdict so they would have no trouble, and that they could put in a specified amount, as they pleased, or state that the embezzlement exceeded a certain amount.    *Held*, that the court did not thereby intrench upon the province of the jury, and there was no error in the procedure followed by the court.

13. Ch. 268, Laws of 1903 (providing that exceptions to refusal to instruct the jury may be taken at any time before the close of the trial term), has no application to trials taking place before it went into effect.

ERROR to review a judgment of the municipal court of Milwaukee county: B. F. DUNWIDDIE, Judge. *Affirmed.*

The defendant was prosecuted and convicted before the municipal court of Milwaukee county of the crime of embezzlement, and brings his writ of error to reverse the sentence. The original information was in two counts. The first count charged that on January 3, 1899, at Milwaukee county, "the defendant, *Leroy W. Secor,* was then and there a servant, agent, and employee of the Goodrich Transportation Company, a corporation then and there duly created, organized, and existing under and by virtue of the laws of the state of Wisconsin, and he, the said *Leroy W. Secor,* not being then and there an apprentice, nor a person under the age of sixteen years, did then and there, by virtue of his said employment, and whilst he was so employed, have the care, custody, and possession of a certain sum of money, to wit, the sum of eight thousand one hundred fifty-seven dollars and fifty-nine one-hundredths dollars ($8,157.59), to the value of eight thousand one hundred fifty-seven and fifty-nine one-hundredths dollars ($8,157.59), of the money and property of said Goodrich Transportation Company, corporation as aforesaid, and the said moneys did then and there, and whilst he was so employed as aforesaid, unlawfully and feloniously embezzle to his own use, without the consent of his said employer, the Goodrich Transportation Company, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Wisconsin." The second count of the information charged the embezzlement of the sum of $9,859.18 on the 3d day of July, 1899, in the same language used in the first count. Upon arraignment the defendant pleaded not guilty to this information. Thereafter, and on the 19th day of May, 1902, the district attorney, by leave of court, filed an amended information, in which, after the allegation that the defendant *Secor* was a clerk, servant, agent, and employee of the Goodrich Trans-

portation Company, the following words were inserted: "to wit, the cashier of the Goodrich Transportation Company, corporation as aforesaid, at its Milwaukee agency, and was then and there charged as such cashier, with the duty of receiving, safely keeping, and depositing the money, checks, and drafts of said Goodrich Transportation Company, corporation as aforesaid, at its Milwaukee agency, and of keeping the books of account of said Goodrich Transportation Company, corporation as aforesaid, at said agency." Also by inserting before the words "have the care, custody, and possession of a certain sum of money," the words "receive and take into his possession." Also by inserting after the statement of the sum of money alleged to have been embezzled the words "good and lawful money of the United States." The defendant objected to the filing of the amended information, but reserved no exception to the ruling of the court, and pleaded "Not guilty" thereto. The case was brought to trial June 10, 1902, and at the opening of the trial the defendant moved that the state furnish a bill of particulars, which motion was overruled, and exception taken. The defendant then moved that the amended information be quashed and dismissed because (1) it was filed without notice to the defendant; (2) because the defendant had pleaded to the information then on file; (3) because it contained an amendment which could not have been made to the original information. This motion was denied, and exception taken. The jury returned a verdict of guilty on the first count of embezzling a sum exceeding $600, and on the second count of embezzling a sum exceeding $100. Motions to set aside the verdict and for a new trial and in arrest of judgment were overruled, and exceptions duly taken.

*A. C. Umbreit,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General,* and *L. H. Bancroft* and *W. D. Corrigan,* assistant attorneys general, and a separate brief by *W. H. Bennett,*

district attorney, and *F. E. McGovern,* of counsel, and oral
argument by *Mr. McGovern* and *Mr. Bancroft.*

WINSLOW, J.   The errors claimed will be considered in
their order as argued.

1. It is said that it was error to allow the filing of the
amended information.   The ground taken is that the pro-
ceeding by information is purely statutory, and that there is
no provision allowing the filing of an amended information,
and hence that an information cannot be amended in a ma-
terial part any more than an indictment can be amended.
*Allen v. State,* 5 Wis. 329.   The particular parts of the
amended information which are objected to are the state-
ment that the defendant was the cashier of the Goodrich
Transportation Company, charged with the duty of safely
keeping its money, checks, and drafts, and the statement that
he did receive and take into his possession the moneys
charged to have been embezzled.   It may be a matter of con-
siderable doubt whether the point has not been effectually
waived.   While the defendant objected to the filing of the
amended information, he reserved no exception to the ruling
of the court, and pleaded "Not guilty" to the new informa-
tion.   It has long been the rule of this court that timely ex-
ception must be taken to the rulings of the court in criminal
as well as in civil cases, or the objection will be deemed
waived.   *In re Roszcynialla,* 99 Wis. 534, 75 N. W. 167.
However, as the defendant moved to quash the amended in-
formation at the opening of the trial, we have concluded to
consider the question on the merits.   Criminal prosecutions
at common law were either by information of the prosecuting
officer, or by indictment of a grand jury.   In general terms,
it may be said that prosecution by information was permis-
sible in misdemeanors, but that felonies could only be prose-
cuted by indictment.   While, as a general rule, indictments
could not be amended by the court in matters of substance,

it was well settled that informations could be amended, or an entirely new information filed, by leave of the court. This distinction was based simply on the fact that the prosecuting officer, unlike the grand jury, was always present in court. 1 Bishop, New Crim. Proc. § 714; 1 Ency. Pl. & Pr. 696–698; *Long v. People,* 135 Ill. 435, 25 N. E. 851. Our constitution, as originally adopted, provided that "no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." Sec. 8, art. I, Const. This clause was, however, amended in 1870 so as to read, "No person shall be held to answer for a criminal offense without due process of law;" and by ch. 137, Laws of 1871 (the provisions of which are now preserved in our statutes), all crimes can be prosecuted by information. This law has been held constitutional. *Rowan v. State,* 30 Wis. 129. While the legislature prescribed the form of the information, and made numerous regulations as to the manner of its use, it cannot be reasonably held that they thereby destroyed its well-settled characteristics at common law, any further than such regulations necessarily had that effect. It was amendable at common law, and the mere fact that its use was extended so as to include other offenses not formerly included within its scope furnishes no reason for holding that this power of amendment was intended to be taken away. The rules applicable to amendments to indictments are not enforced against amendments to informations. *Jackson v. State,* 91 Wis. 253–261, 64 N. W. 838. The prosecuting officer is present in court. He may file an information for any offense which the preliminary examination shows to have been committed, whether it be the offense charged before the examining magistrate or not. If it be ascertained before trial that the information so filed be defective or does not charge the proper offense, no good reason occurs to us now why the prosecuting officer may not, with the consent of the court, amend the information, or substitute a new one; due

care being taken that the accused is not taken by surprise, or otherwise deprived of any substantial right. Doubtless where, as here, an amended information is filed, it must be considered as superseding and taking the place of the original information.

At the close of the state's case the defendant moved for the direction of a verdict of not guilty, for failure of proof in several particulars, among which was that it was not shown that the money embezzled was "good and lawful money of the United States," as charged in both counts of the information. The motion was overruled, and exception taken. After the defense had entered on its case, the district attorney moved to amend the information by striking out the words "good and lawful money of the United States," in both counts, so as to conform to the proofs in the case; there having been no proof as to the exact character of the money alleged to have been embezzled. This amendment was allowed against objection, and exception was duly taken to the ruling. We are clearly of the opinion that this amendment was rightly allowed, under the terms of sec. 4703, Stats. 1898, which allows amendments in case of variance between the statement in the indictment or information and the proof "in the name or description of any person, place, or premises, or of *any thing,* writing or record or the ownership of any property described in the indictment or information." The money embezzled is unquestionably a "thing" described in the information, and our statute (sec. 4666, Stats. 1898) specifically allows any kind of money embezzled to be described simply as money, without designating its particular species.

2. The second contention made is that the *corpus delicti* was not proven by any evidence, save extrajudicial confessions, and that this latter class of evidence is insufficient, when standing alone, to establish the *corpus delicti.* Whether this last-named legal proposition be correct or not, we find it unnecessary to determine, because we find ample evidence

outside of the confessions to prove the body of the crime. The information in this case was framed under sec. 4667, Stats. 1898, which provides that, in any prosecution for embezzlement, it is sufficient to allege generally in the indictment or information "an embezzlement of money to a certain amount or of property to a certain value, without specifying any particulars of any such embezzlement, and on the trial evidence may be given of any such embezzlement committed within six months after the time stated in the indictment or information; and it shall be sufficient to maintain the charge . . . and shall not be deemed a variance if it shall be proved that any money or property of whatever amount, was fraudulently embezzled by the defendant within the said period of six months." The evidence produced by the state showed that the business of the Goodrich Company consisted of the transportation of passengers and freight upon Lake Michigan, and the business of the Milwaukee office aggregated many thousands of dollars during the year. *Secor* was the cashier of the Milwaukee office, and, as such, was charged with the collection and deposit in bank of the amounts received from freights and ticket sales at Milwaukee during the year 1899, and for some time previous thereto. He was also charged with the duty of keeping practically all the books at the Milwaukee office, and did so, with the assistance, to some extent, of other employees. These books were all introduced in evidence, and it appeared from the examination of expert witnesses who had carefully examined them that these books showed a shortage in *Secor's* accounts of more than $8,000 during the six months from January 3 to July 3, 1899, and of more than $9,000 from July 3, 1899, to January 2, 1900. The evidence tended to show that monthly balances were taken, and that the shortage was concealed by the defendant by a system of throwing forward receipts which came in at the end of the month into the next month's account, and entering expenses paid during the early days of one month

among the expenses of the previous month. The receipts consisted of cash, checks, and drafts, and no attempt was made to specify the particular amount of each; nor was it attempted to show that *Secor* embezzled or converted any specified item of money at any definite time. There was evidence, also, that *Secor* made false trial balances in October and November, 1899, in response to a demand from the central office, at Chicago, and that at one time during the year he borrowed money to pay a shortage in his accounts, which he said he had lost by speculation, and again that after he left the employ of the company he went to New York, and was there found living under an assumed name. All of these circumstances are certainly incriminating, and we have been unable to see how it can be said that they do not furnish proof of the body of the crime, if it be a fact that embezzlement can be shown under sec. 4667, *supra,* without proving the conversion of a specific item. Here, however, we are met with the claim that the section in question does not mean that proof of a general shortage is sufficient, but that the embezzlement of a particular sum or item must be shown, and that any other construction would render the section unconstitutional, because the defendant would not be apprised of the exact offense with which he is charged. The statute in question came from Massachusetts, where it was first adopted many years ago. *Comm. v. Wyman,* 8 Metc. 247. It was adopted by Michigan, and afterwards by Wisconsin and Minnesota. Its purpose, plainly, was to relieve the prosecution from some of the difficulties which necessarily were present under the former strict rules of allegation and proof in embezzlement cases, where a trusted agent had carried on his criminal operations for a long period of time. It is very aptly said in the case of *State v. Holmes,* 65 Minn. 230, 68 N. W. 11:

"Embezzlement in such cases very often consists of a series of acts running through a considerable period of time. These separate acts and the amount and description of the property

misappropriated at any one time may not be susceptible of direct proof, while the aggregate result is. The body of the crime consists of this series of acts done by virtue of the fiduciary relation between the employer and the employee, all of which virtually constitute a continuing breach of trust. Prior to this statute, conviction was often difficult, if not impossible. . . . The statute was enacted to avoid these difficulties, first, by authorizing this general form of indictment; second, by permitting this liberality of proof as to the description of the property; and, third, by permitting a conviction of the aggregate amount embezzled by a series of acts from the same employer."

It was also said by the supreme court of Michigan in *People v. Hanaw*, 107 Mich. 337, 65 N. W. 231:

"We think, however, that it is within the power of the legislature to prescribe the form of indictments, keeping in view the constitutional right asserted in this case [i. e., the right of the defendant to be apprised of the charge against him]; and where, as in a case of embezzlement, a defendant has a right to have the charge made certain by examination or by a bill of particulars, it cannot be said that he is not informed of the nature of the charge."

We adopt the views expressed in these two cases.

3. But it is said by the defendant that the court refused his request for a bill of particulars, and that this refusal constituted error. Undoubtedly, as said in the case last cited, the defendant has a right to have the charge against him made certain. The usual way of doing this would be by the furnishing of a bill of particulars; hence the court will generally order such a bill to be furnished, in an embezzlement case, where the indictment is a general one, framed under the provisions of sec. 4667, *supra*. But the refusal to furnish such a bill is not necessarily error, provided the information which the bill would contain has been otherwise furnished. In the present case it appears that there was preliminary examination held, at which the expert who examined the books submitted statements or schedules showing the condition of the

books and the shortage appearing therefrom, and that, a copy of these schedules was then furnished to the defendant, and that defendant had access to all of the books, and examined them and made memoranda therefrom before the trial. These schedules were also introduced in evidence on the trial of the case in connection with the testimony of the expert. Thus it appears that the prosecution confined itself upon the trial to the same claims as those made upon the preliminary examination, and that the defendant was fully informed of such claims upon the examination. Such being the case, it was not error to refuse the demand for a bill of particulars. *People v. McKinney,* 10 Mich. 54.

4. At the close of the evidence for the prosecution the state offered a number of books which were kept in the Milwaukee office in connection with the business, called "Freight Received Books," "Prepaid Receipts," "Advance Charges," and "Billbooks," which were not in the handwriting of the defendant, and the admission of these books is now assigned as error. No objection was made to the introduction of these books at the time they were offered and received, but after the state had rested, and the case was with the defendant, he made a motion to strike out the books as hearsay. As we have before seen, timely exceptions must be reserved to rulings of the court in a criminal case as well as in a civil case; and we are inclined to the opinion that the defendant has waived any objection he might have to the introduction of these books by failing to object to them at the time they were offered, especially in view of the fact that he was fully apprised of their nature and contents, and does not even claim any surprise or inadvertence as a reason for his failure to object. But even if the point be considered as properly raised by the motion to strike out, we find no error in the reception of the books. The defendant was the bookkeeper of the company at the Milwaukee office and charged with the general supervision of all the books kept in the business at that office. The

books in question were a part of the books for the keeping of which the defendant was responsible, although the entries themselves may have been made by subordinate employees. It doubtless was his duty to see that they were properly kept, and we think they were admissible in evidence, not as conclusive evidence, but as books kept under the defendant's supervision and general control, of whose correctness he should, in the performance of his duty, have knowledge. *People v. McKinney, supra.*

5. The claim that the evidence fails to show the conversion or embezzlement of money cannot be sustained. There was ample evidence that the amount embezzled was money. It is true that the evidence showed that checks, drafts, money orders, and express orders were received in payment of freights as well as money; but all the receipts were entered on the books, either by the defendant or his subordinates, as money, and thus the books make a *prima facie* case of the embezzlement of money. The bank account was absolutely correct. So there could have been no embezzlement through the bank. There was evidence of a number of confessions made by the defendant to different persons, in all of which he spoke of his embezzlement as an embezzlement of money which he lost in speculation. Considering the difficulties which surround the prosecution in a case of this kind, running through a long period of time, we think that the proof was ample to show that the amount taken was in money.

6. Error is claimed by reason of certain instructions given by the court. At the opening of his charge the court made some general remarks on the nature and gravity of the offense charged, as follows:

"The offense charged in the information is a grave one, as it involves the criminal betrayal and breach of trust, reposed in a trusted employee. The entire property of a corporation must of necessity be intrusted to, and its business carried on

by, its employees, for, whether we call them officers, agents, servants, or by some other name, they are nevertheless its employees. And to a large extent the property and business of individuals must be intrusted to employees, such as clerks, cashiers, and the like; and it is a matter of great importance that all employees who, by virtue of some special confidence reposed in them, are intrusted with their employers' money or property, should faithfully care for and honestly account for whatever is committed to their care, custody, or possession. Both corporations and individuals can protect their property from strangers by bolts and bars and iron doors, but not so with trusted employees. The crime of embezzlement involves not only the fraudulent conversion of an employer's money, but also a wrongful betrayal of the trust and confidence reposed by the employer in the employee. The case is also an important one on the part of the defendant, because it involves his personal liberty and his reputation and character. Important to the state especially, perhaps, as it is charged with the grave duty of apprehending and convicting and punishing those who do commit criminal offense, it is equally important to the defendant, because, as I have already suggested, if you should convict him it would take away his personal liberty for a time. I therefore ask your careful and close attention to such instructions as I shall give to you, by which you are to be guided in considering the evidence and arriving at your verdict."

It is seriously urged that these general instructions, or at least some parts of them, are erroneous, because they amount practically to an argument in favor of the state, and tend to neutralize all subsequent instructions as to presumption of innocence and reasonable doubt. We have been unable to see the force of these criticisms. To our minds, the sentences quoted are entirely proper for the purpose of impressing on the jury the gravity of the crime, and the importance both to the state and the defendant of a careful consideration of the evidence and the instructions.

Upon the subject of reasonable doubt, the court, after hav-

ing charged the jury that the defendant was presumed inno-
cent until the evidence satisfied them beyond a reasonable
doubt of his guilt, said:

"By 'reasonable doubt' I mean a doubt of guilt for which
a reason can be given, arising out of the evidence."

Later in the charge the court charged as follows:

"As already said, you must bear in mind all through your
deliberations the presumption of innocence hereinbefore ex-
plained, and that such presumption must prevail unless you
are satisfied from the evidence, under the court's instruc-
tions, that the defendant is guilty, beyond a reasonable doubt.
I have already told you that a reasonable doubt is a doubt of
guilt for which a reason can be given, arising out of the evi-
dence. You are not to go outside of the evidence to hunt up
doubts, nor should you entertain a doubt that is merely fanci-
ful, speculative, or chimerical, or which is based only upon
unreasonable or groundless conjecture. A doubt which ignores
a reasonable construction of the whole evidence is not a rea-
sonable doubt. Guilt is proven beyond a reasonable doubt
when all the evidence in the case, clearly, impartially, and
rationally considered, is sufficient to impress the judgment of
ordinary reasonable and prudent men with a conviction upon
which they would act without hesitation in their own gravest
and most important affairs of life."

It is said that this charge falls within the criticism made
by this court of a charge on the subject of reasonable doubt
in the case of *McAllister v. State,* 112 Wis. 496, 88 N. W.
212, to the effect that it assumes that the jury are to start
with the assumption that conviction is to be the result unless
a reasonable doubt is proven. We do not think that such is
its effect, or that it could be reasonably so understood. The
jury were twice told in this very connection that the pre-
sumption of innocence attended the defendant all through the
trial, and must prevail unless the evidence satisfied them of
the defendant's guilt beyond a reasonable doubt. The defini-
tion of "reasonable doubt" given is fairly equivalent to the
instructions approved in *Frank v. State,* 94 Wis. 211, 68
N. W. 657, and *Emery v. State,* 101 Wis. 627, 78 N. W. 145.

It appears by the record that the jury returned into court twice for further instructions. Before they retired the second time, the court charged them generally as follows:

"I desire to instruct you a little farther as to the duties in the matter of an agreement in this case, as it has taken considerable time; it has cost, of course, considerable money; and it is important and desirable that, if you can come to an agreement, that you should do so; and I will read to you what our supreme court has said in this regard, to the end that it may guide you in your further considerations. In a case that was tried before Judge BARDEEN, now on the supreme bench, after the jury had been out some time and failed to agree they were brought into court, and informed by the court, in effect, that they ought not to stand out in an unruly and obstinate way, but should reason together, and talk over the existing differences, if any, and harmonize the same, if possible; that it was their duty to meet the testimony in a spirit of fairness and candor with each other, and not stand back obstinately, but to reason together, and to apply the law as given by the court to the facts in the case, and arrive at a verdict. And Justice CASSODAY approves that instruction as a proper instruction to the jury. So, also, in another case, the instruction was given, and approved by the court. It is the duty of each juryman, while the jury are deliberating upon their verdict, to give careful consideration to the views his fellow jurymen may have to present upon the testimony in the case. He should not shut his ears, and stubbornly stand upon the position he first takes, regardless of what may be said by other jurymen. It should be the object of all of you to arrive at a common conclusion. To that end, you should deliberate together with calmness. You may retire again, and see if you can agree upon a verdict. If you become convinced that you cannot, then you will so notify the officer, and he will let me know."

To this was added the statement:

"Of course, each juror should be convinced beyond a reasonable doubt, as I have already instructed you; and I trust that you will now calmly deliberate, and see whether or not you can or cannot agree upon a verdict."

It is said that these remarks were so far threatening or coercive as to come within the criticism made by this court in the case of *Hodges v. O'Brien,* 113 Wis. 97–106, 88 N. W. 901. It would have been better, had the question of expense and the reference to the justices of this court been omitted, but we are not ready to say that prejudicial error results therefrom. In other respects the instructions are unexceptionable.

When the jury finally returned into court with a verdict in writing, it was passed to the court, and the following colloquy took place:

"Court: This verdict I cannot receive. It is not proper in form. You mean all right, but there are two counts, and you remember that I instructed you that you must find him guilty or not guilty of the first count, and guilty or not guilty of the second count. Each count must be found separately by itself. I will have to send you back to correct your verdict in that particular. You may amend it, if you desire. District Attorney: I think the instruction was that they might set the amount, if they did not find the amount charged in the information. Court: What I stated to you was that you might say: 'We, the jury impaneled to try the issue herein, find the defendant guilty as charged in the first count of the information, and that the value of the money embezzled exceeds a certain amount,' which you will insert, say, exceeding $100 or $500, or any other sum that you agree on. I will fix the verdict so that you will have no trouble. You can put a specific amount that you want to, or you can put down, say, exceeds a certain amount."

The jury then retired, and later returned into court with a verdict by which they found the defendant guilty under the first count of embezzling a sum exceeding $600, and on the second count of embezzling a sum exceeding $100. Just what the difficulty was with the original verdict does not appear, but it would seem from the remarks of the court that the jury had failed to find a separate verdict as to each count. If the verdict was informal or incomplete, it was subject to

·correction at any time before the jury was discharged from the case. Indeed, it was the plain duty of the court to see that opportunity was given the jury to return a perfect verdict, so that justice might not miscarry. We have been unable to see that the court trenched upon the province of the jury. On the other hand, the presiding judge seems to have been careful to leave all questions of fact to the jury. We have found no error in the procedure followed by the court.

7. A number of instructions were asked by the defendant and refused. It is a matter of some doubt whether proper exceptions were taken, under the recent ruling in *Gehl v. Milwaukee P. Co.* 116 Wis. 263, 93 N. W. 26. The record affirmatively shows that they were not taken until after the jury had returned into court with the original verdict, but whether they were taken before the corrected verdict was returned is left in uncertainty. Even if it be considered that proper exceptions were taken, it does not seem necessary to discuss the questions raised in detail. The more important of them have already been disposed of in this opinion in the discussion of other exceptions. So far as correct and applicable, the instructions requested were fairly covered by the charge of the court. It is proper to note that the rule announced in *Gehl v. Milwaukee P. Co. supra,* has now been changed by ch. 268, Laws of 1903, so that exceptions to refusals to charge may be taken at any time before the close of the trial term. This law, however, has no application to the present case, as the trial took place before its passage.

Upon the whole record, we have found no prejudicial error.

*By the Court.*—Judgment affirmed.