STATE OF IOWA, Appellee, v. BEN GLAZE, Appellant.

CRIMINAL LAW: Instructions—Conflicting Instructions—Embez-
1 zlement—Elements. Reversal must follow the giving of instruc-
   tions announcing both correct and incorrect rules under which to
   arrive at a verdict, with consequent unsolvable uncertainty as to
   which rule the jury followed.

   PRINCIPLE APPLIED: The court in one paragraph correctly
   told the jury that one charged with embezzlement could not be
   convicted in the absence of proof of a fraudulent intent. In an-
   other paragraph, the jury was told (a) that it could convict if
   defendant was short in his accounts, (b) that the owner had
   demanded the return of the money, and (c) that defendant had
   not returned or accounted for the money. *Held*, the two instruc-
   tions were fatally conflicting, and reversal must follow.

APPEAL AND ERROR: Right of Review—Estoppel—Inviting
2 Action of Court. A litigant may not urge the court into a certain
   line of action and, after the court has complied, predicate error
   thereon. So held in an embezzlement case, wherein defendant
   requested instructions to the effect that, before conviction could
   be returned, certain named things must be proven; and the court
   having, in substance, complied with the request, defendant later
   alleged that said enumerated things were not sufficient.

TRIAL: Instructions—Conflicting Instructions—Nonapplicability of
3 Doctrine. The doctrine of reversible error because of conflicting

instructions is not applicable to an alleged conflict that gives complainant greater advantage than he asked or was entitled to.

**EMBEZZLEMENT:** Conversion—Fraudulent Conversion of Money
4 Accounted For. An employee may be guilty of the embezzlement of money collected by him and promptly paid to the employer. More concretely, the employee is guilty of embezzlement by collecting money on a certain claim due the employer, by fraudulently concealing the fact that he has collected such particular claim, and by remittance of said money to the employer *for the purpose of concealing a former embezzlement by him of the employer's funds.*

**EMBEZZLEMENT:** Indictment—Aggregate or Limited Charge—
5 Scope of Evidence.
    (1) An indictment charging the aggregate of a series of embezzlements as *one* embezzlement—that is, so drawn as to treat a series of embezzlements during the same employment as one act of embezzlement—renders admissible, as substantive evidence, *all such series of embezzlements.*
    (2) An indictment so drawn as to limit the charge to one or more distinct acts of embezzlement occurring during the same employment, or to embezzlements occurring between specified dates of the employment, renders inadmissible, *except as bearing on motive and intent,* any acts of embezzlement beyond those specified, or not occurring within the specified time.

**TRIAL:** Reception of Evidence—Limiting Purpose of Evidence—
6 When Request Must Be Made. Request to the court to limit the purpose for which particular evidence is received must be made *when the evidence is offered and received,* and if not so made, may be ignored by the court. So held in an embezzlement case wherein evidence of embezzlements other than those charged was received, without limiting said evidence to the issue of motive or intent.

**EMBEZZLEMENT:** Evidence—Office Books—Identification and
7 Proof Necessary to Admissibility. Entries in the books and records of an office in which defendant was employed are not admissible to prove an embezzlement charge against defendant, unless the State first proves (a) that they were in the handwriting of defendant, or (b) that they were made under the directions of defendant, or (c) that defendant had knowledge of the contents of entries made by persons other than himself.

**EVIDENCE:** Best and Secondary—Complicated Books—Contents.
8 The rule requiring the production of the best evidence is not violated by permitting a witness to testify that the contents of named exhibits do *not* appear in certain books of a complicated nature then before the court and jury.

EMBEZZLEMENT: Instructions—Sufficiency. An instruction, in keeping with defendant's claim, that he could not be convicted if the money was taken or stolen by someone other than defendant, is not in reason to be understood as saying that he must be convicted unless the shortage occurred in that manner, when the jury was also told that defendant could not be convicted "if the State has failed to prove beyond a reasonable doubt that defendant wrongfully embezzled and appropriated the money to his own use."

INDICTMENT AND INFORMATION: Duplicity—Embezzlement—"Money, Checks, and Drafts." No duplicity is involved in an indictment, and no occasion for an election by the State in the trial thereof, which charges the embezzlement of "money, checks and drafts," let alone where the indictment avers "that money, checks and drafts were received and collected," and that there was an embezzlement of "the aforesaid sum of money." (Sec. 5302, Code, 1897.)

EMBEZZLEMENT: Evidence—Variance—Proving Less Than Alleged—When Not Fatal. An indictment which alleges the embezzlement of "money, drafts and checks" may be validly supported by evidence of the embezzlement of money only, no variance resulting from proving less than is alleged when that which is proven is sufficient to sustain a conviction.

EMBEZZLEMENT: Agents and Servants—"Cashier"—Sufficiency of Proof—Election. An averment that defendant embezzled certain money "as cashier" is sufficiently proven by evidence that he was either cashier, servant or agent. Therefore, under such a charge no election to proceed against defendant "as servant" or "as cashier" may be required.

EMBEZZLEMENT: Ownership of Property—Corporations De Facto. Corporate capacity is sufficiently proven by evidence establishing a *de facto* corporation—for instance that the alleged corporation was carrying on business as a railway and was acting as a corporation.

*Appeal from Clarke District Court.*—H. K. EVANS, Judge.

SATURDAY, SEPTEMBER 23, 1916.

CONVICTION for embezzlement. Defendant appeals.—*Reversed* and *Remanded.*

*O. M. Slaymaker,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* Assistant Attorney General, and *M. L. Temple,* for appellee.

SALINGER, J.—I. The court charged in Instruction 14 that, to entitle the State to a conviction, it must, among other things, prove beyond a reasonable doubt that defendant committed actual conversion and embezzlement of moneys, checks or drafts of the railroad company as charged in the indictment. But it adds:

1. CRIMINAL LAW: instructions: conflicting instructions: embezzlement: elements.

"Or, if the State has failed in this, then, in order to justify a conviction, the State must prove beyond a reasonable doubt the shortage in the defendant's accounts, and that the C. B. & Q. Railroad Company made demand on defendant for the sum of money charged in the indictment to have been embezzled, and that the defendant neglected or refused to account and pay over the same, or a sufficient amount to cover the amount of shortage actually existing, but not of a greater sum than was demanded by the said C. B. & Q. R. R. Co."

It is unquestionable that this wholly omits fraudulent intent, which, of course, the State concedes to be an essential. It is entirely possible that one is not actuated by fraudulent intent, even though his employer makes a demand for money and there be a neglect or refusal to account for same or pay it over. The avoidance by the State is that other instructions told the jury that a fraudulent intent was essential to conviction. The defendant responds that this does not cure the error in the instruction given, and presents, at best for the State, reversible error on account of giving conflicting instructions. The objection cannot be concluded by invoking the rule that the instructions must be taken together. Assume that the charge taken as a whole, except Instruction 14, correctly enumerates what is essential to conviction. That does not justify an alternative instruction which affirmatively permits the jury to return a verdict of guilty, though an essential element be not proven. That is just what the instruction complained of does. The jury had been instructed as to what it must find to justify a conviction. It was then told that, if

it could not find those things, it might still convict if some
other things were found. This last enumeration omitted one
essential. Its giving was error. For all we can know, the
verdict may rest on 'a finding that defendant was short, and,
on demand, refused or neglected to pay. It may, to be sure,
rest on the elements outlined by other instructions, but who
is to say it does?

We must reverse where, for all we know, the jury may
have adopted the erroneous instead of the correct rule. *State
v. Hartzell*, 58 Iowa 520; *Kerr v. Topping*, 109 Iowa 150.
Where there was a lengthy instruction,. in one part of which
there was error in stating the right to kill in repelling an
assault, we reversed, though in another part the correct rule
is stated, because it cannot be known which rule the jury fol-
lowed. *State v. Keasling*, 74 Iowa 528. See *State v. West*
(La.), 12 So. 7. In *State v. Minella*, 177 Iowa 283, we reverse
because, while it is correctly charged that one may take life
in defense of another if it seem to him in reason necessary,
it is also charged that the belief of the one defended is to be
considered. When one instruction lays down a rule in unequiv-
ocal language, and another a different or contrary rule, there
must be a reversal. *Mester v. Zaiser*, 143 Iowa 623; *McDivitt
v. Des Moines City R. Co.*, 141 Iowa 689; *Platt v. City*, 136
Iowa 221; *Hawes v. Burlington, C. R. & N. R. Co.*, 64 Iowa
315.

II. .In Instruction 3,. the jury was told that, if the State·
had proven eight specified essentials beyond a reasonable
doubt, it should find defendant guilty. Appellant asserts '
that these eight alone were not sufficient, and ·
2. APPEAL AND ER-  that there were other essentials which are not
ROR: right of re-
view : estoppel:  enumerated. in the instruction. It is further
inviting action
of court.  urged that it conflicts with Instruction No.
12. If this enumeration does not embrace all that should
have been proven, appellant may not complain. The instruc-·
tion given is a substantial ·copy of Instruction 2, offered by
defendant. The only difference is this: The one given says

that, before convicting, the State must prove the eight things beyond a reasonable doubt. It closes with the statement that, if the eight things have been so proven, there should be a conviction; but, if there is a failure to prove any one of them, there should be acquittal. The one asked by defendant starts out by saying, "You are instructed that, before you can convict defendant, the State must show by proof, convincing beyond a reasonable doubt, all of the following (eight) essentials," and it closes with the statement, "That, if the State has failed to prove any one of such essentials by evidence which satisfies you beyond a reasonable doubt, you must acquit defendant." It seems to us this speaks in terms of exclusion, and may fairly be construed to be a request to charge that proof of these eight essentials would justify a conviction—just what the instruction given does.

It is said, too, that the instruction conflicts with No. 12. This last instruction may, for the purposes of argument, be assumed to require more than those eight essentials, and, in that view, to be in conflict with No. 3. But, since appellant had asked the trial court to charge that the proof of eight things would justify a conviction, he is in no position to complain that the court, on its own motion, made the burden of conviction greater than appellant conceded it to be. The conflict in this case creates an error consisting of giving defendant more than he asked.

3. TRIAL: instructions: conflicting instructions: nonapplicability of doctrine.

III. The indictment alleges that defendant had embezzled the sum of $339.92. The court charged that this sum was made up of three specified checks, for $133, $86.24 and $120.68, respectively. The effect of Instruction 15, complained of, is that, if the defendant collected the $339.92, as charged in the indictment, and failed to place that sum collected on the books, and fraudulently concealed that he had collected it, he would be guilty of embezzling the $339.92 and appropriating the same to his

4. EMBEZZLEMENT: conversion: fraudulent conversion of money accounted for.

own use feloniously, although he had remitted that very money to his employer, if he remitted it to be applied in payment of moneys wrongfully appropriated earlier. In *Secor v. State* (Wis.), 95 N. W. 942, the evidence tended to show that monthly balances were taken, and that the shortage was concealed by the defendant by a system of throwing forward receipts which came in at the end of the month into the next month's account, and entering expenses paid during the early days of the month among expenses of the previous month. The case holds that making false trial balances, borrowing money to pay a shortage in accounts lost by speculation, and other things mentioned, are incriminating circumstances, and tend to furnish proof of the body of the crime. This does not go to the extent of holding that these, of themselves, will justify a conviction. In effect, the one here did go that far. But we think it did not err. To collect a stated sum which is the property of an employer, to conceal that fact, and to account for it as money due the employer for something else that has been collected for him, appropriates and embezzles the moneys so used. It concealed fraudulently that the sum had been collected for the items for which it was paid to the cashier. While the employer got $339.92, the employee none the less converted it. The case is not essentially different from what it would be if a servant collected $300 for wheat which the employer entrusted him to sell and remit for, and the servant had the check for the wheat sold made payable to himself and forwarded it to pay for a home he had bought of the employer, concealing that the remittance was the proceeds of the master's grain.

IV. The indictment charges that, between the 1st of November, 1913, and the 1st day of February, 1914, defendant was continuously in the employ of the railway company as its cashier at Osceola, Iowa, and that,

5. EMBEZZLEMENT: indictment: aggregate or limited charge: scope of evidence. between said dates, defendant embezzled the money of the company in the aggregate sum of $339.92. A number of exhibits dated

earlier than November 1, 1913, consisting of freight bills, receipts and the like, and which it may be assumed tend to show embezzlements, were admitted over apt objection. The court declined to limit the effect of these exhibits to intent or motive, and on the contrary, charged the jury that it should consider "all the acts, statements and conduct of the defendant in reference to the books, waybills, checks or drafts and freight bills and receipts, together with all the other evidence." Appellant says it was not only error to receive these exhibits without limiting them to intent or motive, but that said instruction aggravated the error.

The State plants itself upon the following provision of Section 4842, Code, 1897:

"If money or property is so embezzled or converted by a series of acts during the same employment, the total amount of the money and the total value of the property so embezzled or converted shall be considered as embezzled or converted in one act, and he shall be punished accordingly."

Under this statute, and Section 5302, Code, 1897, the indictment is sufficient if it alleges the embezzlement of money generally, without designating its particular species, and the proof is sufficient if it shows that defendant embezzled any money, although the particular species be not proved; and a series of embezzlements may be treated as one act of embezzlement. But is that controlling? The question we have here is this: When the State sees fit not to avail itself of these statute privileges, and declares that the amount embezzled did not exceed $339.92, and the court interprets the indictment and the proof to be that this was made up of three specified checks, may it then be shown as substantive proof of the offense charged that money not embraced in said aggregate, nor in said items, was embezzled? In other words, on a charge that three items aggregating $339.92 were embezzled between stated dates, can it be shown, except as bearing upon motive, that a much larger aggregate was embezzled, and this at times differing from the ones specified in the indictment?

Upon this narrow question, the cases relied on for the State seem to us to have no bearing. In *Ker v. People*, 110 Ill. 627, 646, it is said that the body of the crime consists of many acts; that the separate acts may not be susceptible of direct proof, but that the aggregate result is, and that that is embezzlement. This is a reason for allowing evidence of all involved in the aggregate charged, and perhaps for merely charging the aggregate. It is no reason for allowing proof of more than the aggregate, and of things differing from what is specifically charged. It merely points out a difficulty in proof which an indictment differently framed would have obviated in this case. In *Brown v. State*, 18 Ohio St. 496, the verdict was a finding of just the aggregate amount "corresponding with the court counts of the indictment," and the utmost it does for the State is to hold that, where there are very many items, the charge may be in the aggregate, because otherwise there would have to be "almost as many counts in an indictment as there were dollars of money embezzled."

*Secor v. State* (Wis.), 95 N. W. 942, involves an information under a statute which permits the charge to be:

"An embezzlement of money to a certain amount, or of property to a certain value, without specifying any particulars of any such embezzlement, and on the trial evidence may be given of any such embezzlement committed within six months after the time stated in the indictment; and it shall be sufficient to maintain the charge, . . . and shall not be deemed a variance if it shall be proved that any money or property of whatever amount was fraudulently embezzled by the defendant within the said period of six months."

The holding is that proof of a general shortage is sufficient, and that the statute was made to obviate the difficulties which necessarily existed under the former strict rules of allegation and proof, where a trusted agent had carried on his criminal operations for a long period of time. As for the rest, the information did charge the aggregate of the embez-

zlement, and nothing was introduced, not involved in that aggregate. The *Secor* case quotes with approval from *State v. Holmes* (Minn.), 68 N. W. 11, that the separate accounts and amount of description of property at any one time may not be susceptible of direct proof, while the aggregate result is, and that, without statutes such as this, conviction was often difficult, if not impossible; that the statute was enacted to avoid such difficulties: First, by authorizing this general form of indictment; second, by permitting liberality of proof as to description of property; and, third, by permitting a conviction for the aggregate amount embezzled by a series of acts.

*State v. Reinhart,* 26 Ore. 466, is another case of permitting evidence within the aggregate charged, and the exact holding is that, though it be charged that the aggregate was taken on a specified day, this will admit evidence of the whole transaction made up of connected acts, although they did not all occur on that day. It is said that, if the State should be compelled to elect, there would be great difficulty in proof, and that, if it had to rely for conviction upon any one single act, the accused, although he might be admittedly guilty of embezzling large sums of money in the aggregate, would probably escape conviction.

These demonstrate that the aggregate of a series of acts may be charged because the procedure has been liberalized for good reason, and that, on proof of the aggregate, it will not matter that the proof is not as clear as it might be as to the specific acts involved. It still does not seem to meet the proposition that, where the State chooses to charge an aggregate, and to specify its component items, and the time in which the aggregate was taken, it may not, for substantive proof, use other items which are additions to the aggregate declared in the indictment, and which cover time not included in the time specified in the indictment. It may not be questioned that, under said statute, the charge in the indictment that the defendant embezzled $339.92, interpreted by the court

to consist of three specific checks, is to be treated as charging the doing of a single act; but we find nothing in the statute nor in the cases cited by the State which should stretch this statute into a dispensation from having the proof meet the allegations of the indictment. It was competent under our statute to charge embezzlement of any number of items, or to charge generally that a sum aggregating a certain total had been embezzled, and it would then be proper to admit, as substantive proof, any items set out in the indictment, and within the statute of limitations; or, there being no specification, to introduce item after item within the period of limitation, until the aggregate averred was reached. But neither course was pursued. The concrete situation is that, as defined by the court, the indictment charged the defendant with having embezzled three specified items, aggregating $339.92, while in the employ of the railway company, and between the 1st day of November, 1913, and the 1st day of December, 1914. So far as substantive evidence is concerned, it was, in these circumstances, improper to receive testimony tending to show embezzlements earlier than the first and later than the last date, and swelling the aggregate beyond that named in the indictment.

In *State v. McAninch*, 172 Iowa 96, 122, we approve of *Fleming v. State*, 28 Tex. App. 234, and *Commonwealth v. Connors*, 116 Mass. 35, which hold substantially, and the first of which rules expressly, that:

"When a continuing offense is alleged to have been on a certain day, and on divers days and times between that and another day specified, the proof must be confined to acts done within the time."

If offered for more than intent and motive, the testimony was well objected to, because it varied the indictment.

## 2.

The State urges that, at all events, the request to limit said testimony to motive or intent was not made in the proper

time nor in the proper manner, and that the point is waived

because there was no proper request for an

6. TRIAL: recep- instruction. As to the form of the request
. tion of evi-
dence: limiting and the time at which it was made, we are
purpose of evi-
dence: when re- inclined to think it the better practice that
quest must be
made. request be made when the testimony, which

should be received for a limited purpose only, is offered.

In *People v. Gray* (Cal.), 5 Pac. 240, 244, it is held that
not to limit to motive was not error, because no such instruc-
tion was requested. *Gallardo v. State* (Tex.), 40 S. W. 974,
is, in effect, that the point here is not available if an attempt
to have limitation was not made in the manner required by
law for asking instructions.

*Taylor v. Commonwealth* (Ky.), 75 S. W. 244, holds no
more than that the jury should have such testimony limited
in the charge.

The general rule is that evidence of other acts of embez-
zlement during the period in which that charged occurred,
is not admissible except on motive. *Commonwealth v. Shep-
ard,* 1 Allen (Mass.) 575, 581.

In *Kircher v. Incorporated Town of Larchwood,* 120 Iowa
578, 582, we said that certain evidence was competent as bear-
ing upon the question of knowledge on the part of defendant
of the condition of the walk at the point of the accident.
And:

"But it was competent for no other purpose. The evi-
dence was admitted generally, and the court did not at the
time or thereafter in any way direct the jury respecting the
purpose for which the same was admitted, or limit the appli-
cation thereof to the question to which alone it was relevant.
This should have been done had a request been made therefor.
But, no such request having been made, and the evidence
being competent for one purpose, the appellant is in no
position to complain."

In *Marion v. Chicago, R. I. & P. R. Co.,* 64 Iowa 568, 573,
we said:

"If it was competent, relevant or material for any purpose, the objection was properly overruled. If the attention of the court had been called to the specific objection by instructions asked, *or otherwise,* there can be no doubt that the proper instruction would have been given."

In *Parkhill v. Town,* 61 Iowa 103, 105, we said:

"It often happens that evidence is admissible for one purpose and no other, and is of such character that there is danger that it will not be restricted in its application to its legitimate object. Where this is so, it cannot be excluded. The most that the party can require, against whom it is admitted, is that the jury shall be properly cautioned."

We said in *Farmer v. Thrift,* 94 Iowa 374, 378:

"We think that it is a very general practice, in trial courts, in passing upon the admissibility of evidence, and especially where it is admitted, and is of especial application, to state for what purpose it is admissible. The practice is to be encouraged within proper limits, for two reasons: First, it enables counsel to better understand and shape the trial in conformity with the view of the court, or, if thought to be erroneous, to meet the situation as the facts or the law will permit, including the preservation of exceptions; second, it enables the jury, when the testimony is received, to give it the intended application, for testimony, when received, is likely to be in some way at once applied."

Procedure, by asking an instruction in the usual way, would largely fail to accomplish that which should be done, viz., to impress the jury that testimony which it is hearing is not to lodge in their mind for more than that for which it may properly be considered. Every moment of time that the jury has the testimony without limit tends to make a later charge upon request fail of being effective. We think the authorities are in accord with this position.

V. Exhibit T is a book of carbon copies of daily reports made at Osceola for the period between November 5, 1913,

and January 29, 1914. In it, under the head "Waybills Held
Out by Glaze," appear the names of persons
7. EMBEZZLEMENT: who, it is claimed, paid freight aggregating
evidence: office
books: identifi- $3,783.69. Following this is written: "Show
cation and proof
necessary to as due on Glaze shortage. A. V. Price, Trav-
admissibility.
eling Auditor." This is not in defendant's
writing. The State's witness, Price, says "T" is a book of
which defendant kept "the greatest part." The abstract
avers without dispute that "T" is in the handwriting of
different parties, only a part of which entries are made by
the defendant. The exhibit was objected to, among other
reasons, because it is shown that it contains entries of persons
other than Mr. Glaze. The State responds that, if Exhibit T
was kept for the purpose of showing the daily business of
the company, and its receipts at the local office, and if defend-
ant had control of the book, and it was his business to see
that proper entries were made upon the book, and if entries
were made from which it could be inferred that he had
retained part of the money due the company, the book would
be admissible. In *Secor v. State* (Wis.), 95 N. W. 942, the
Supreme Court of Wisconsin sustains the position of the
State, to the extent of holding that, since the defendant was
bookkeeper of the company in the Milwaukee office, and
charged with general supervision of the books kept in the
business at that office, and the books were part of the books
for the keeping of which defendant was responsible, it was
his duty to see that they were properly kept, and they were
admissible in evidence as some evidence, on the theory that he
should, in the performance of his duty, have knowledge on
whether the books were correctly kept. This, however, finds
proven what in this case the State merely asserts. Without
reference to the Wisconsin case, following *State v. Carmean*,
126 Iowa 291, at 301, and *State v. Ames*, 119 Iowa 680, therein
cited, we are constrained to hold that the objection is well
taken. We there hold that entries on the books of the com-
pany, made by clerks in the course of their employment, with-

out the direction or knowledge of the defendant, should not be admitted to show misappropriation of money, with which defendant was charged. True, the defendant does not show that these entries were made without his direction or knowledge, but he was not required to. If the State desired to use this book as an admission against him, it was for it to lay the foundation. The book should not have been permitted to go to the jury in the absence of evidence that it was in the writing of defendant, or that whatever was there in the writing of others was done under the direction of defendant, or that he knew of entries made by such others, and of what they were. If such foundation could be laid only for parts of the book, it should have been received with a caution to the jury in some form to consider no part of it made by others without the knowledge of defendant. This is true of Exhibit G as well, and of Exhibit N.

VI. Exhibit Q is dated February 5, 1912, signed by Johnson, as agent, with a rubber stamp, and shows payment of freight by Curnes in the amount of $41.34. Exhibit P is signed the same way, and shows receipt of freight from Curnes in the amount of $33.75, and is dated September 3, 1912. Exhibit R is signed in the same way, and receipts to Curnes for freight paid in the amount of $37.60, and is dated October 28, 1912. Exhibit O is a freight bill or receipt to Curnes, dated November 18, 1912, showing freight charges in $25.74, signed by Johnson, agent, with a rubber stamp, and is not the writing of defendant. Exhibit M is a check given by Curnes-Eddy & Company to J. E. Johnson, agent, under date of January 13, 1913, and is for $34.32. It is endorsed by the agent and is paid by the drawee bank.

8. EVIDENCE: best and secondary: complicated books: contents.

Exhibit N is a freight bill issued to said Curnes for said amount, and signed by Johnson in the same way. Exhibit T runs between November 5, 1913, and January 29, 1914. Exhibits N, O, Q and R all deal with matters occurring between February 5, 1912, and January 13, 1913, and do not appear

in Exhibit T. The objection to Exhibit T itself is, among other things, that it is incompetent, irrelevant and immaterial, and has not been properly identified. The objection to Exhibits N, O, Q and R is that they are incompetent, irrelevant and immaterial to any issue of the case, and that the books themselves are the best evidence. The objection argued is merely that the witness Price should not have been allowed to say that these exhibits did not appear upon the book Exhibit T. If the book itself were admissible, and the matters covered by the other exhibits should appear thereon, the failure to have these items appear thereon is a circumstance for the jury; and the appellant himself makes a good argument for why the reception of such testimony was proper, in pointing out that the books offered were difficult for the ordinary juror to understand, and not easily explained. The real complaint is that the testimony was injurious. That is often true of perfectly proper testimony, and is not in itself ground for complaint.

VII. Some complaint is made because Price testified that money evidenced by Exhibit M was not accounted for to the company, and that Entries in Exhibit G show that in this he told an untruth. If this be so, that was argument for the jury, but is not ground for reversal.

VIII. In Instruction 14, the court said that, if "the shortage, if any, was caused and occasioned by reason of the money being taken by some person other than the defendant, as claimed by him, then the defendant would not be guilty." Instruction 15 further charges that the defendant claims that, as to any items of account which he had collected and placed on the books of the railroad company, and on which he had failed to remit or account, the money so collected had been wrongfully taken from the drawer where kept, without fault on his part, and he had not appropriated any of the money of the railroad included in the alleged shortage. In Instruction 15, it is said:

9. EMBEZZLEMENT: instructions: sufficiency.

"The defendant claims that, of the items comprising said alleged sum as claimed by the State, he obtained a draft or drafts, and remitted the same to the said C., B. & Q. R. R. Co."

The charge then continued to say that, on the other hand, if the jury found that defendant was short in his accounts, but that the shortage, if any, was caused by someone other than the defendant stealing and appropriating the money, "and if the state has failed to prove beyond a reasonable doubt that the defendant wrongfully embezzled and appropriated money, checks, or drafts of the railroad to his own use, the verdict should be not guilty."

Appellant complains that the statement, "defendant would not be liable if someone other than he stole and appropriated the money," is prejudicially misleading and unduly limiting, because the effect of it is to tell the jury that the shortage could occur only by someone other than defendant's stealing and appropriating the money. This would be erroneous, were this the true construction, but we do not think the charge could thus have been understood. A statement that, if a shortage occurred in a given way, defendant is not liable, is not in reason to be understood as saying that he must be convicted unless the shortage occurred in that way.

As to the other statement, the complaint is made that it, too, was an undue limitation, and unduly narrowed the contentions made in the case. It is admitted that there was testimony from which the jury might find that there was failure to remit because someone had taken money from the drawer, but it is said that they might have found, too, that the shortage was occasioned by something other than that. This is a repetition of the former complaint, and the answer to it is the answer to this. The defendant was not thereby limited to this one theory. It amounted to telling the jury that, if they found from the evidence that money had been taken from the drawer, they could not convict. We are unable to see how this precluded it from finding that the shortage occurred in some other way.

IX. Section 5302 of the Code of 1897 provides that, in an indictment for embezzlement, it shall be sufficient to allege the embezzlement or fraudulent conversion to have been of money generally, without designating the particular species, and proof that the defendant embezzled any money or bank note will be sufficient to support the averment, although the particular species be not proved. The indictment here charged the receiving as cashier of "money, checks and drafts" belonging to the employer; that there was an embezzlement of "the aforesaid sum of money."

10. INDICTMENT AND INFORMATION: duplicity: embezzlement: "money, checks and drafts."

The defendant complains because the State was not compelled to elect whether it would rely for a conviction upon the defendant's having embezzled money or checks or drafts. He insists further that there was no evidence to support the charge of embezzling checks or drafts. He says that while, under the statute, it was perhaps unnecessary to be specific on just what was embezzled, this presents a case of needless allegation which must be strictly proven as laid; that the court erred in making it possible for the jury to find defendant guilty of embezzling checks or drafts; that it should have told it that there was no evidence to justify a verdict for such embezzlement; and that, assuming there was no error in refusing to compel the State to elect, it was yet error not to sustain the motion to direct on account of failure to prove said allegations of the indictment.

If distinct crimes are charged, the prosecution should be required to elect. *State v. Fidment*, 35 Iowa 541; *State v. Abrahams*, 6 Iowa 117. But distinct crimes were not charged. The indictment avers merely that money, checks and drafts were *received and collected*. Even if it were charged that it was money, checks and drafts that were converted and embezzled, there would be no duplicity. As well say that an indictment for larceny, being required to show that more than $20 in value was taken by a single theft, charged several crimes because it averred that the property stolen in one

theft consisted of a calf worth $15 and a pig worth $6. It does not constitute multiplicity to charge that both money and drafts were taken, unless, in the language of *Brown v. State*, 18 Ohio St. 496, there should be a limiting and particularizing, such as putting ''as many counts in an indictment as there were dollars of money embezzled.'' Passing that, while the indictment does say that those things were received, the crime charged is that of embezzling just money. As seen, the statute permits the indictment to allege an embezzlement of money generally, without designating its particular species.

As for variance and strict proof of needless allegation, there is no quarrel over the rule, and we held, in *State v. Cadwell*, 79 Iowa 473, that, where an indictment charged that defendant obtained money fraudulently by use of his individual draft, there could not be put in evidence a draft drawn by him as cashier of a bank in which he was interested as a partner, and drawn by him as cashier in the name of such bank. So, too, it has been held that, where force is charged in a statute rape, it must be proven, though it need not have been charged. But the draft excluded in the *Cadwell* case would have been admissible if the indictment had averred that the money was obtained by a draft drawn by the defendant, or one drawn by him as cashier. If the embezzlement charged was that of both money and drafts, it would not be a failure of proof to prove that money only or drafts only were embezzled. To prove less than is charged is not material, if enough be proved to sustain conviction. *State v. McAninch*, 172 Iowa 96. If, as is the fact, nothing but the embezzling of money was charged, then there is no case of proving needless allegation nor of variance.

11. EMBEZZLEMENT: evidence: variance: proving less than alleged: when not fatal.

There was no needless allegation, and the very thing averred was proved. Nor should the State have been compelled to elect whether it would prosecute defendant upon the claim that he embezzled as servant or as cashier.

12. EMBEZZLEMENT: agents and servants: "cashier:" sufficiency of proof; election.

Section 4841, Code, 1897, provides that "whoever" embezzles, etc., money, etc., which may be the subject of larceny, shall be guilty of larceny. Code Section 4842 is that:

"If any officer, agent, clerk or servant of any corporation or voluntary association, or if any clerk, agent or servant of any private person or copartnership . . . embezzles . . . any money or property of another . . . he is guilty of larceny."

Cashier is not mentioned in this statute. Unless a cashier be either an agent or servant, a cashier may, on defendant's theory, embezzle without punishment. This is not so, because the cashier is either a clerk or servant, or is perhaps both. It was sufficient to prove that defendant was either the servant or cashier of the railroad company. The charge was that he received the money which he embezzled as cashier; that he did so while in the employ of the Chicago, Burlington & Quincy Railway, as cashier. There was no averment in terms that he was a servant; there was that he was a cashier. Embezzlement by a cashier is punishable, and no reason can be conceived why there should have been an election on prosecuting him except as cashier.

X. The defendant is entitled to know by allegation whether the State intends to show ownership in individuals, in a firm composed of individuals, or in a corporation. *State v. Kelley* (Mo.), 105 S. W. 606. It has been held that, on a charge of forgery of a draft of a mining company, testimony that witness was president of the company, and found the forged draft in its vouchers, was sufficient proof that the company was a corporation *de facto*. *People v. Frank,* 28 Cal. 507. And so of testimony that the company known by the name given in the indictment was a corporation *de facto* and doing business as such. *People v. Barric,* 49 Cal. 342. In *People v. Hughes,* 29 Cal. 257, defendant was charged with burning a building insured by a duly incorporated company, of the name Hartford Insurance Company. A witness testi-

13. EMBEZZLE-
MENT: owner-
ship of prop-
erty: corpora-
tions *de facto.*

fied that he was acting as the agent of the corporation having the insurance, delivered the policy, and that it was received by defendant, and it was held that from this the jury might well find the *de facto* existence of the corporation.

The indictment here charges that defendant was in the employ of the Chicago, Burlington & Q. Railroad Company in the freight office of said railway at Osceola, Iowa, and that said railway company is a corporation and doing business in Clarke County, Iowa. It is submitted that the State had the burden of proving each of these allegations, and that there is a failure of proof. The State did have such burden, but we disagree with the claim that the jury might not find the same to have been sustained. Under the authorities above referred to, there was an abundance of evidence that defendant was the employee of the railway company during the period covered by the indictment, and an abundance of testimony that it was doing business as a railroad and conducting a freight office at Osceola, in Clarke County. There is the evidence that the book Exhibit T was a copy of the daily reports for the business done by the railway company at Osceola; and the evidence of Price that it was a book containing daily reports of the Chicago, Burlington & Quincy Railroad Company, Osceola freight office, showing the freight received. All through the record there is evidence from which a jury is not only justified in finding all that the defendant insists should have been shown on this head, but which would make it difficult to justify a refusal to so find from it.

XI. It is not seriously pressed upon us that there was not sufficient evidence to take the case to the jury, and we are of opinion that the point is not well taken.

For the errors pointed out in Divisions I, IV and V, there must be a reversal.—*Reversed* and *Remanded*.

EVANS, C. J., LADD and GAYNOR, JJ., concur.